UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| DWAYNE JAMMAL, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. H-08-1330 |
| | § | |
| EL PASO CORPORATION, *et al*, | § | |
| | § | |
| Defendants. | § | |

## OPINION AND ORDER

Pending before the Court is Defendants El Paso Corporation, the El Paso Corporation Amended and Restated 2000 Transition Severance Pay Plan (the Plan), and Plan Administrator of the El Paso Corporation 2000 Transition Severance Pay Plan's (the Administrator) (collectively, "El Paso") motion for summary judgment (Doc. 24), as well as Plaintiff Dwayne Jammal's ("Jammal") response (Doc. 55) and the Defendants' reply (Doc. 56). Upon review and consideration of this motion, the response and reply thereto, the relevant legal authority, and for the reasons explained below, the Court finds Defendants El Paso's motion for summary judgment should be granted.

I.  Background and Relevant Facts

Plaintiff Jammal sues for benefits under the terms of an employee benefit plan within the meaning of the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended, 29 U.S.C. § 1001, *et seq.*  (Doc. 1 at 1.)  Jammal began his employment with The Coastal Corporation ("Coastal") on January 5, 1988, as a senior reservoir engineer.  (*Id.* at 3.)  In January 2001, Coastal merged with El Paso and Jammal continued to work for El Paso as vice president of acquisitions, divestitures and reserves.  (*Id.*)

In December 2003, El Paso disclosed that, based on an independent reservoir engineering company's review, it expected "a material negative revision" to its previously published reserve estimates.  (Doc. 24-3 at 7, Mason Decl., Attach. 1, El Paso Form 8-K dated February 2, 2004.) Several weeks later El Paso restated its reserves downward by approximately 1.8 trillion cubic feet, a reduction of nearly forty percent.  (*Id.* at 27–57, Attachs. 2, 3, El Paso Form 8-Ks dated February 17, 2004 and March 10, 2004.)  The U.S. Securities and Exchange Commission ("SEC") subsequently initiated a formal investigation.  (*Id.* at 58, Attach. 4, El Paso Form 8-K dated March 26, 2004.)  El Paso's board of directors retained a law firm to conduct an independent review of the drastically reduced estimates.  (*Id.* at 65, Attach. 5, El Paso Form 8-K dated May 3, 2004.)  The law firm found that "during the period from the beginning of 1999 through the end of 2003, certain employees used aggressive and, at times, unsupportable methods to book proved reserves . . . [and] certain employees provided proved reserve estimates that they knew or should have known were incorrect at the time they were reported."  (*Id.* at 70.)

In February 2004, El Paso's exploration and production companies hired Lisa Stewart ("Stewart") as president.  (Doc. 24-4 at ¶ 2, Stewart decl.)  In April 2004, Stewart decided to terminate the employment of Jammal and a number of other senior officers.  (*Id.* at ¶¶ 5–6.)  All of those employees were terminated for cause.  (*Id.*)  On April 30, 2004, Jammal's employment with El Paso was terminated by Ann Raden ("Raden"), El Paso's vice president of human resources.  (*Id.*)  Because his termination was for cause, Jammal was ineligible for severance benefits under the Plan.  (Doc. 1 at ¶ 20.)

On October 25, 2004. Jammal appealed denial of his termination benefits to the Plan and the Plan Administrator.  (*Id.* at ¶ 17.)  On January 24, 2005, the Plan and its Administrator denied Jammal's appeal.  (*Id.* at ¶ 18.)  On March 24, 2005, Jammal appealed the denial of the

first appeal, which was denied on May 24, 2005.  (*Id.* at ¶ 19)  On April 30, 2008, Jammal filed

suit seeking recovery of severance benefits under the terms of El Paso's ERISA-governed

Severance Pay Plan in an amount exceeding $188,000, plus consequential damages from denial

of those benefits.  (*Id.* at ¶¶ 21–28.)  El Paso moves for summary judgment.  (Doc. 24.)


II.  Summary Judgment Standard

        A party moving for summary judgment must inform the court of the basis for the motion

and identify those portions of the pleadings, depositions, answers to interrogatories, and

admissions on file, together with the affidavits, if any, that show that there is no genuine issue as

to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R.

Civ. P. 56(c);  *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).   The substantive law

governing the suit identifies the essential elements of the claims at issue and therefore indicates

which facts are material.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The initial

burden falls on the movant to identify areas essential to the nonmovant's claim in which there is

an "absence of a genuine issue of material fact." *Lincoln Gen. Ins. Co. v. Reyna*, 401 F.3d 347,

349 (5th Cir. 2005). If the moving party fails to meet its initial burden, the motion must be

denied, regardless of the adequacy of any response.  *Little v. Liquid Air Corp.*, 37 F.3d 1069,

1075 (5th Cir. 1994) (*en banc*).  Moreover, if the party moving for summary judgment bears the

burden of proof on an issue, either as a plaintiff or as a defendant asserting an affirmative

defense, then that party must establish that no dispute of material fact exists regarding all of the

essential elements of the claim or defense to warrant judgment in his favor.  *Fontenot v. Upjohn*,

780 F.2d 1190, 1194 (5th Cir. 1986) (the movant with the burden of proof "must establish

beyond peradventure *all* of the essential elements of the claim or defense to warrant judgment in

his favor" (emphasis in original)).

Once the movant meets its burden, the nonmovant must direct the court's attention to evidence in the record sufficient to establish that there is a genuine issue of material fact for trial. *Celotex*, 477 U.S. at 323–24.   The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Indust. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (citing *U.S. v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)).   Instead, the non-moving party must produce evidence upon which a jury could reasonably base a verdict in its favor.   *Anderson*, 477 U.S. at 248; *see also DIRECTV Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2005).   To do so, the nonmovant must "go beyond the pleadings and by [its] own affidavits or by depositions, answers to interrogatories and admissions on file, designate specific facts that show there is a genuine issue for trial."   W*ebb v. Cardiothoracic Surgery Assoc. of N. Tex., P.A.*, 139 F.3d 532, 536 (5th Cir. 1998). Unsubstantiated and subjective beliefs and conclusory allegations and opinions of fact are not competent summary judgment evidence.   *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998); *Grimes v. Tex. Dept. of Mental Health and Mental Retardation*, 102 F.3d 137, 139–40 (5th Cir. 1996); *Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir. 1994), *cert. denied*, 513 U.S. 871 (1994); *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (1992), *cert. denied*, 506 U.S. 825 (1992).   Nor are pleadings summary judgment evidence.   *Wallace v. Tex. Tech Univ.*, 80 F.3d 1042, 1046 (5th Cir. 1996) (citing *Little*, 37 F.3d at 1075).

The nonmovant cannot discharge his burden by offering vague allegations and legal conclusions.   *Salas v. Carpenter*, 980 F.2d 299, 305 (5th Cir. 1992); *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 889 (1990).   Nor is the court required by Rule 56 to sift through the record in search of evidence to support a party's opposition to summary judgment.   *Ragas v. Tenn. Gas*

*Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998) (citing *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915–16 & n.7 (5th Cir. 1992)).  Nevertheless, all reasonable inferences must be drawn in favor of the nonmoving party.  *Matsushita*, 475 U.S. at 587–88; *see also, Reaves Brokerage Co. v. Sunbelt Fruit & Vegetable Co.*, 336 F.3d 410, 412 (5th Cir. 2003).  The party opposing a motion for summary judgment does not need to present additional evidence, but may identify genuine issues of fact extant in the summary judgment evidence produced by the moving party.  *Isquith v. Middle S. Utils., Inc.*, 847 F.2d 186, 198–200 (5th Cir. 1988).  The nonmoving party may also identify evidentiary documents already in the record that establish specific facts showing the existence of a genuine issue.  *Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 178 (5th Cir. 1990).

## III.  Discussion

"[D]enial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan."  *Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989).  "Trust principles make a deferential standard of review appropriate when a trustee exercises discretionary powers."  *Id.* at 110 (citing Restatement (Second) of Trusts § 187 (1959)).

In the instant case, the Plan provides that an otherwise eligible employee is not entitled to severance pay if "his or her employment is terminated by an Employer for cause (which shall include, but not be limited to, (w) a violation of the Code of Conduct of the Company, (x) inadequate or substandard performance, . . . ."  (Doc. 24-1 at 15, Plan § 3.1(b)(i)(B).)  "All actions and all determinations made in good faith by the Plan Administrator shall be final and

binding upon all persons claiming any interest in or under the Plan."  (*Id.* at 20, § 6.1(d).)  The

Plan further states that

> The Plan Administrator will have the discretion to make any findings of
> fact needed in the administration of the Plan and will have the discretion
> to interpret or construe ambiguous, unclear or implied (but omitted) terms
> in any fashion he or she deems to be appropriate in his or her sole
> judgment.  The validity of any such finding of fact, interpretation,
> construction or decision will not be given *de novo* review if challenged in
> court, by arbitration or any other forum and will be upheld unless clearly
> arbitrary or capricious.

(*Id.* at 19–20, § 6.1(b).)

Where, such as here, the plan confers discretionary power on the plan administrator, the

appropriate standard of review is abuse of discretion.  However, "if a benefit plan gives

discretion to an administrator or fiduciary who is operating under a conflict of interest, that

conflict must be weighed as a 'facto[r] in determining whether there is an abuse of discretion.'"

*Firestone*, 489 U.S. at 115 (quoting Restatement (Second) of Trusts § 187, Comment d (1959)).

In applying the abuse of discretion standard, courts use a two-step analysis.  *Stone v. UNOCAL*

*Termination Allowance Plan*, 570 F.3d 252, 257 (5th Cir. 2009); *Wildbur v. ARCO Chem. Co.*,

974 F.2d 631, 637 (5th Cir. 1992).  First, the court must determine whether the plan

administrator's decision was legally sound, and, if it was not, second, whether the decision was

an abuse of discretion.  *Stone*, 570 F.3d at 257; *Wildbur* at 637–38.  At the first step, the court

need not consider whether the plan administrator operated under a conflict of interest.  *Stone*,

570 F.3d at 257.  Whether the interpretation of the plan is legally sound requires consideration of

(1) whether a uniform construction of the plan has been given by the administrator, (2) whether

the interpretation is fair and reasonable, and (3) whether unanticipated costs will result from a

different interpretation of the plan.  *Id.*

El Paso contends that Jammal was denied severance pay in compliance with the Plan because he was terminated for cause. (Doc. 24 at 1.) Jammal argues that the "for cause" designation of his termination is "a fraud and a farce employment by Defendants for the sole purpose of avoiding payment of the benefits in question." (Doc. 55 at 1.) Jammal also questions whether "the Plan Administrator, upon appeal by Mr. Jammal, conducted an adequate investigation of the propriety of Plaintiff's termination 'for cause.'" (*Id.* at 2.)

The Court finds, however, that the Plan was given a uniform interpretation by the Administrator that is both fair and reasonable and that no unanticipated costs would result from a different interpretation. The Administrator's decision to classify Jammal's termination as "for cause" was legally sound and thus did not constitute an abuse of discretion under the fiduciary duties outlined in the Plan.

IV. Conclusion

Accordingly, the Court hereby ORDERS that Defendant El Paso's motion for summary judgment (Doc. 24) is GRANTED.

SIGNED at Houston, Texas, this 9th day of September, 2010.

MELINDA HARMON
UNITED STATES DISTRICT JUDGE